Carl MICHAEL, an individual,
Plaintiff–Appellant,

v.

RIVERSIDE CEMENT COMPANY
PENSION PLAN, Defendant–
Appellee.

No. 99–55519.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 15, 2000

Filed Sept. 17, 2001

Joseph Ribakoff, Long Beach, California, for the plaintiff-appellant.

Thomas N. Charchut, Haight, Brown & Bonesteel, L.L.P., Santa Monica, California; Karen K. Suhre, Hughes & Luce, L.L.P., Dallas, Texas, for the defendant-appellee.

Before: CANBY, McKEOWN, and PAEZ, Circuit Judges.

Opinion by Judge CANBY; Dissent by Judge PAEZ.

CANBY, Circuit Judge:

Carl Michael ("Michael") appeals from the district court's grant of summary judgment in favor of defendant Riverside Cement Company Pension Plan in this action brought under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(a). Michael contends that his early retirement benefits were impermissibly reduced by a subsequent amendment to the Riverside plan in violation of ERISA's anti-cutback rule, 29 U.S.C. § 1054(g). We conclude that he is correct, and we accordingly reverse the judgment of the district court.

## I.

The material facts of this case are undisputed. The controversy arises in an unusual context, because Michael took an early retirement and then returned to work at Riverside a few years later. Riverside's retirement plan was subsequently amended, and Michael thereafter retired for the second time. His claim, which we find meritorious, is that the terms of his second retirement under the amended plan impermissibly "eliminat[ed] or reduc[ed]" his earlier retirement benefits as they had been guaranteed by the plan prior to its amendment. See 29 U.S.C. § 1054(g)(2)(A).

Michael retired for the first time from Riverside Cement Company in 1983, at age 49. His thirty-plus years with Riverside allowed him to draw unreduced early retirement benefits of $607.82 per month under Riverside's then current pension plan (the "1981 plan"). After receiving a total of $34,645.74, Michael returned to work at Riverside in 1988 and his early

retirement benefit payments were suspended as called for under the 1981 plan. A crucial point, however, is that the 1981 plan provided that reemployment with Riverside did not otherwise impair the early retirement benefits Michael had received. At a later retirement, the pension was to be figured "as if the Pensioner were then first retired" with credit for all service before and after the earlier retirement with no deduction for benefits received during the period of early retirement.[1]

In 1991, the Riverside plan was amended to provide significantly more generous benefits.[2] Under the amended plan, however, prior receipt of early retirement benefits by a rehired employee caused a substantial reduction in the pension otherwise payable upon second retirement.

Michael retired again in 1996 with more than thirty-nine years of service with Riverside. Pursuant to a provision unchanged since the 1981 plan, the amended plan credited Michael for his combined years of service before and after his early retirement. Unlike the 1981 plan, however, the amended plan required that Michael's pension benefits at his second retirement be reduced by the actuarial equivalent of the benefits he had received during his first retirement. This actuarial offset, however, was not permitted to reduce Michael's monthly pension below the amount payable to him under the old plan at the time it was amended-$689.94.[3]

The effect of the actuarial offset in Michael's case was substantial. His total of 39 years of service qualified him for a pension, before reduction, of $1,796.51 per month. After reduction of the actuarial equivalent of the early retirement benefits he had previously received,[4] his pension

---

1. The 1981 Plan provided:

   The pension of any Pensioner shall cease if the Pensioner is reemployed by the Corporation and shall resume on his subsequent retirement. The pension payable upon such subsequent retirement shall be calculated as if the Pensioner were then first retired, but shall be based upon the sum of his Credited Service at his earlier prior retirement plus his Credited Service since rehire.

2. The Riverside Plan underwent certain transformations during changes in corporate organization, but the details of those changes do not affect the present controversy. The Plan was amended in 1990 and the modifications were incorporated into a new Plan document in 1991; we refer collectively to the amendments as the 1991 amendment.

3. The amended plan provided:

   If a retired Employee receiving Pension payments reenters the employ of an Employer, his pension shall be suspended....

   .    .    .    .    .

   If an Employee's employment with an Employer is interrupted, or treated hereunder as interrupted, and then recommenced, any Pension subsequently payable to the Employee shall be calculated by combining Benefit Service and Compensation as described in the next sentence. Benefit Service credit and Compensation earned by the Employee prior to such interruption shall be combined with any Benefit Service credit and Compensation earned after such interruption, as though all such Benefit Service credit and such Compensation were earned from one continuous uninterrupted period of employment, subject, however, to the exclusion of any such Benefit Service or Compensation under other provisions of this Plan. Any Pension so calculated shall be reduced on an Actuarially Equivalent basis to reflect any benefit payments (other than Disability Pension payments and any lump sum payment that resulted in a loss of Benefit Service hereunder) received by the Employee prior to attaining his Social Security Retirement Age during any such interruption of employment, but shall never be reduced below the amount of Pension previously payable to the Employee.

4. The actuarial equivalent of the $34,645.74 that Michael had received was calculated to be $79,683.97.

was $1,035.53 per month.[5]

It is true that Michael was better off after the amendment than he would have been without it. Had the 1981 plan remained in effect at Michael's second retirement in 1996, his benefit (unreduced by his early retirement benefits) would have been $800.03 per month. On the other hand, if the 1981 plan were still in effect, Michael's fellow workers retiring with 39 years service and no prior early retirement would receive the same pension that he would: $800.03 per month. After the amendment, Michael received $1,035.53 per month and his first-retiring fellow workers with 39 years of service received $1,796.51 per month.

Michael filed suit against the Riverside Plan, contending that the reduction of his final retirement benefit by the actuarial equivalent of the benefits he received during his prior early retirement violated ERISA's anti-cutback rule, 29 U.S.C. § 1054(g). The district court granted summary judgment for the Riverside Plan. From this ruling, Michael appeals.

## II.

We review de novo the district court's grant of summary judgment. *Shaw v. Int'l Ass'n of Machinists & Aerospace Workers Pension Plan,* 750 F.2d 1458, 1460 (9th Cir.1985). We also review de novo the district court's interpretation of ERISA. *Spain v. Aetna Life Ins. Co.,* 11 F.3d 129, 131 (9th Cir.1993).

## III.

Immediately prior to the 1991 amendment to Riverside's plan, the plan provided that the early retirement benefits that Michael had received would cause no reduction in his second retirement benefits. In other words, the plan provided that he would never have to pay back his early retirement benefits. Yet when Michael retired for the second time, the amended plan in effect required him to do just that. We conclude that, in requiring the reduction for Michael's early retirement benefits, the plan violated the anti-cutback provision of 29 U.S.C. § 1054(g).

ERISA gives pension plan administrators "the ability to fashion their own plan formulas." *Carver v. Westinghouse Hanford Co.,* 951 F.2d 1083, 1088 (9th Cir.1991). All plans, however, are subject to the "outer bounds on permissible accrual practices" established by ERISA. *Alessi v. Raybestos–Manhattan, Inc.,* 451 U.S. 504, 512, 101 S.Ct. 1895, 68 L.Ed.2d 402 (1981). Congress' purpose in enacting ERISA was to "ensure that 'if a worker has been promised a defined benefit upon retirement-and if he has fulfilled whatever conditions are required to obtain a vested benefit... he actually receives it.'" *Id.* at 510, 101 S.Ct. 1895 (citation omitted).

One of the outer bounds on an employer's accrual practices under ERISA is the prohibition against decreasing accrued benefits by plan amendment, known as the "anti-cutback rule." 29 U.S.C. § 1054(g). The anti-cutback rule provides:

(g) Decrease of accrued benefits through amendment of plan

(1) The accrued benefit of a participant under a plan may not be decreased by an amendment of the plan....

(2) For purposes of paragraph (1), a plan amendment which has the effect of—

---

**5.** Michael actually began receiving $935.08 per month, because he selected an optional survivor benefit, but the $1,035.53 per month benefit is the appropriate figure to use in this comparison between the 1981 plan and the amended plan.

(A) eliminating or reducing an early retirement benefit or a retirement-type subsidy (as defined in regulations) . . .

with respect to benefits attributable to service before the amendment shall be treated as reducing accrued benefits.

29 U.S.C. § 1054(g).[6]

The question presented here, therefore, is whether Michael's early retirement benefits were eliminated or reduced by plan amendment. To answer this question, it is necessary to determine exactly what Michael's early retirement benefit was under the 1981 plan. The 1981 plan makes the answer perfectly clear: those benefits were the payments Michael received under the condition that, if he were to be reemployed, as he was, they would not cause a reduction in his second retirement benefit based on his total years of service.

The next question is whether this early retirement benefit, so defined by the plan, was eliminated or reduced by the 1991 amendment. Here, too, the answer is plain. By requiring the deduction of the actuarial value of Michael's early retirement benefits, the plan amendment clearly eliminated or reduced the early retirement benefits as they had existed under the 1981 plan. A valuable component of those benefits under the 1981 plan-that they would not cause a reduction in benefits of a second retirement-was nullified.

In granting summary judgment to the Riverside Plan, the district court focused only on the net effect of the amended plan on Michael's annual benefit commencing in 1996. The district court found no prohibited reduction of accrued benefits, because Michael's monthly benefit commencing in 1996–$1,035.53–was greater than the

monthly benefit he would have received in the absence of the 1991 amendment to the plan. But all employees with years of service gained handsomely by the amendment; to reduce Michael's gain only because of early retirement benefits, which were paid under condition that they would cause no such reduction, reduces those prior benefits, as they were defined by the 1981 plan. No more is required to constitute a violation of the anti-cutback provision.

This court has previously looked beyond the net effect of a plan amendment on annual benefit payments, to the features of the benefit formula itself, and found an impermissible reduction of an accrued benefit. In *Shaw*, we found that a plan amendment that phased out a "living pension" feature over several years decreased an accrued benefit in violation of § 1054(g). *Shaw*, 750 F.2d at 1463–65. This feature provided for an increase in a retiree's pension whenever there was a subsequent increase in salary for the position the retiree had held upon retirement. When this provision was deemed by the plan administrators to have become too expensive, they amended the plan to phase out the escalation provision. We held that this amendment effected an impermissible decrease in benefits that were "promised, anticipated and accrued," even though the amendment permitted some increase in the retirees' pensions from their dollar level prior to the amendment. *Id.* at 1463–66.

Here, too, Michael's justified expectations and entitlements under the 1981 plan were defeated in whole or in part by the 1991 amendment. The offset provision effectively eliminated five years worth of Michael's early retirement benefits that

---

6. ERISA elsewhere defines an "accrued benefit" as "the individual's accrued benefit determined under the plan and ... expressed in the form of an annual benefit commencing at normal retirement age." 29 U.S.C. § 1002(23).

had not only been "promised, anticipated and accrued," but paid under the condition that they would not have to be paid back if he were reemployed. The reduction of Michael's second retirement benefit was the exact equivalent of requiring him to write out a check to the plan on the day he retired for the second time, in the amount of principal and interest received during his first retirement. That Michael's net annual benefit under the amended plan was actually higher than any of the annual figures calculated under the 1981 plan was a coincidence of a benefit increase enjoyed by all employees, and simply served to hide an impermissible cutback. We decline to accept the proposition that an increase in benefit accruals can "make up for" an otherwise impermissible cutback that reduces that increase.

Riverside contends that its early retirement offset is equivalent to offsets allowed for such payments as workers' compensation. An offset of some such payments, in the form of an "integration" requirement, has been allowed because an individual employee receives the same benefit level as other similarly situated employees but reaches that level through a combination of payments from the pension fund and some other outside income source. *Alessi*, 451 U.S. at 514, 101 S.Ct. 1895; *Bonovich v. Knights of Columbus*, 146 F.3d 57, 58 (2d Cir.1998). By combining individuals' outside income maintenance streams, such as Social Security, with the pension funds, the total benefit pool permits a higher payout for each participant. *Alessi*, 451 U.S. at 514, 101 S.Ct. 1895.

The short answer to this argument, however, is that there is no provision of ERISA that explicitly protects such additional "integrated" payments from reduction or elimination by plan amendment.

But there is an explicit anti-cutback rule in § 1054(g) that protects early retirement benefits from elimination or reduction. That provision precludes an amendment that nullifies the condition on which the early retirement benefits were paid-the condition that they would not cause a reduction in benefits from a second retirement.[7]

■ Contrary to Riverside's contention, Michael will receive no "windfall" by elimination of the offset. Rather, he is the recipient of a reduction in promised benefits. If there was a "windfall," it was simply increased benefits to all employees who started work before the 1991 amendment. But Michael and other returning retirees were singled out for "actuarial payback" of their early retirement benefits. To be sure, Michael benefitted from the generous unreduced early retirement benefit promised and delivered under the 1981 plan, which allowed returning employees to keep subsidized early retirement benefits already received, but the anti-cutback rule protects even generous early retirement benefits from reduction, so long as they were written into the plan.

## CONCLUSION

The Riverside Plan impermissibly reduced Michael's accrued benefits in violation of ERISA. Michael collected a promised and anticipated early retirement benefit which was not subject to repayment upon reemployment under the governing plan; he then effectively was required to pay it back under a plan amendment. That consequence of the amendment will not escape the reach of the anti-cutback rule simply because it is masked by a new benefit formula that

---

**7.** It should be apparent from our discussion that early retirement benefits paid with no such condition would present an entirely different case.

leaves Michael with a net (but reduced) increase in annual retirement benefits.

Accordingly, we reverse the district court's grant of summary judgment to the Riverside Plan. The parties presented cross-motions for summary judgment in the district court, and there are no disputed issues of material fact. We accordingly instruct the district court on remand to grant summary judgment to Michael, awarding him benefits from the date of his second retirement at the rate of $1,796.51 per month with interest, reduced to take account of the survivorship option Michael selected as well as payments already made.

**REVERSED and REMANDED** with instructions.

PAEZ, Circuit Judge, dissenting:

Carl Michael claims that an amendment to the Riverside Cement Company Pension Plan "decreased" his "accrued benefit" and therefore violated ERISA § 204(g), 29 U.S.C. § 1054(g). The majority agrees, concluding that (1) a component of Michael's "accrued benefit" under the unamended plan was the promise that, if Michael returned to work after his first retirement, there would be no offset, or deduction, for benefits already received and (2) the offset introduced in the amended plan-the actuarial equivalent of the benefits he received during his first retirement-decreased that accrued benefit. The issue Michael raises is a complicated one-one that does not lend itself to an easy answer. I cannot agree, however, with the majority's application of § 204(g) in the context of this case, and therefore I respectfully dissent.

One fundamental proposition in particular disposes of Michael's § 204(g) claim. As the majority acknowledges, "Michael was better off after the amendment than he would have been without it." Slip Op.

at 13365. That is, comparing the periodic benefit Michael would have received had the plan not been amended in 1991 to the benefit Michael received under the plan as amended in 1991, the benefit calculated under the *amended* plan was more generous. As I interpret § 204(g), an amendment that, taken as a whole, leaves a plan participant no worse off under the amended plan than he would have been under the unamended plan cannot be characterized as a "decrease" in the participant's accrued benefit.

In reaching this conclusion, I readily agree with the majority that all "features of the benefit formula" that may enhance a plan participant's benefit, including plan provisions such as the "no-offset" rule here, must be considered in determining a plan participant's "accrued benefit" under the pre-amendment plan. *See* Slip Op. at 13369 (citing *Shaw v. Int'l Ass'n of Machinists & Aerospace Workers Pension Plan,* 750 F.2d 1458, 1463–64 (9th Cir. 1985)). And, *a fortiori,* I agree that an amendment that introduced an offset for the first time *could* result in an impermissible decrease in accrued benefits. But the elimination of one favorable component of a pre-amendment benefit formula-such as the "no offset" rule at issue in this case-will not necessarily yield an impermissible decrease in the participant's accrued benefit. Rather, in my view, the product of the pre-amendment benefit formula *as a whole* is the protected "accrued benefit." And if, for a particular participant, the upside of the post-amendment benefit formula outweighs or equals the downside (as compared to the pre-amendment formula), then such an amendment would not constitute a decrease in the participant's accrued benefit.

This interpretation of § 204(g) is in accord with the relevant legislative history. *See Retirement Equity Act of 1984,* S.Rep.

**1030**

No. 98–575, at 28–29, 1984 U.S.C.C.A.N. 2547, 2574–75 (discussing circumstances under which an amendment to a plan's benefit formula for early retirees would violate § 204(g), and suggesting, *inter alia,* that, if the benefit calculated under the amended formula is no worse than the benefit calculated under the unamended formula, there is no violation). It also has the advantage of permitting plan sponsors the flexibility to reexamine existing plans and adopt a new benefit formula that benefits (or at least does not harm) all participants.

In short, although the amendment at issue may not have enhanced Michael's second periodic retirement benefit as much as it enhanced all the other plan participants' benefits, he was better off with the amendment than he would have been had Riverside Cement not amended the plan. Under these circumstances, I am unable to conclude that there has been a violation of § 204(g). I would affirm the judgment of the district court.