**Lisa CLARK; Lonnie Clark; Edward Nieradka, Plaintiffs—Appellants,**

v.

**CITY OF RENO; Jerry Hoover, Police Chief; James Weston, Former Acting Chief of Police; A. Salter, Reno Police Officer 4682; D. Parker, No. 2487; S. Elkins, No. 4480; J. Sammons, No. 4486; R. Knight, No. 2262; D. Brazda, No. 0797; D. Robinson, No. 2768; S. Dugan, No. 4206; De St. Maurice, No. 4205; Jerry Jones, Sgt.; Dave Quest, Sgt.; Does 1–50 inclusive, & Red and White Corporations, 1–10 inclusive, and Black and Blue Municipal Entities 1–10, Defendants—Appellees.**

No. 99–17346.

D.C. No. CR–97–00629–DWH.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 13, 2001.

Decided Nov. 27, 2001.

Reinhardt, Circuit Judge, filed opinion concurring in part and dissenting in part.

Before REINHARDT, TASHIMA and BERZON, Circuit Judges.

MEMORANDUM *

Appellants appeal the district court's summary judgment order dismissing their claims for civil rights violations under 42 U.S.C. § 1983. Reviewing the challenged order de novo, *Deppe v. United Airlines,* 217 F.3d 1262, 1264 (9th Cir.2000), we affirm in part, reverse in part, and remand. Because the parties are familiar with the facts and procedural history of this case, we will not recount them here.

1. *Unlawful Search.* The Reno Police Department ("RPD") officers were responding, promptly, to a report of possible gunfire emanating from appellants' residence. A prompt—and limited—search for victims was therefore justified under the emergency doctrine. *United States v. Cervantes,* 219 F.3d 882, 888 (9th Cir. 2000); *Mincey v. Arizona,* 437 U.S. 385, 392, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978).

■ Appellants allege, and present some evidence, that after entering the apartment, the officers opened cupboards and drawers and went through piles of dirty laundry looking for a gun or evidence of wrongdoing, although there is also evidence to the contrary. If proven, such conduct goes beyond what is permissible under the emergency doctrine's limited exception to the Fourth Amendment and was therefore unlawful. *Cervantes,* 219 F.3d at 890. Since there is a contested issue of fact concerning whether or not the search exceeded its emergency doctrine justification, summary judgment as to the scope of the search was improper.

■ 2. *Unlawful Detention.* What constitutes a reasonable investigatory detention depends in part on the officers' reasonable safety concerns. In certain dangerous circumstances, officers may use

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as may be provided by 9th Cir. R. 36–3.

aggressive tactics to detain a person while conducting an investigation. *United States v. Buffington,* 815 F.2d 1292, 1300 (9th Cir.1987); *see also United States v. Alvarez,* 899 F.2d 833 (9th Cir.1990); *United States v. Bautista,* 684 F.2d 1286, (9th Cir.1982). The tactics used in this case, however, exceeded the bounds of a valid investigatory detention.

■ The officers did not spot appellants on the street but ordered them out of their home in the middle of the night on the basis of a report of gunfire in the apartment building, with no basis for believing that any particular resident of the apartment was the alleged shooter. Eleven armed officers and a canine unit surrounded the building. *Cf. Washington v. Lambert,* 98 F.3d 1181, 1190 (9th Cir.1996) (noting that when an officer is alone or out-numbered, more aggressive tactics may be justified). It was *after* the officers ascertained that appellants were not armed that they were kept handcuffed and face-down on the ground (and, in the case of Lonnie Clark, pinned painfully and denied the opportunity to use the bathroom when, due to a medical problem, he asked to do so) for at least eight minutes—the testimony varies as to the exact time— while officers executed their search of the apartment. *See United States v. Robertson,* 833 F.2d 777, 780 (9th Cir.1987) (stating that an investigatory stop "involves no more than a brief stop, interrogation and, under proper circumstances, a brief check for weapons"). Finally, appellants were more than cooperative with the police from the initial phone call on, providing no indication of a need to restrain them during the investigation once they were all found to be unarmed. For all these reasons, the officers' actions in this case went beyond those proper for a reasonable investigatory detention. *Compare United States v. Miles,* 247 F.3d 1009 (9th Cir.2001) (find-

ing detention reasonable where two officers, with guns drawn, detained on the street a suspect matching a description of a gunman, handcuffed him, patted him down, and found that he was carrying ammunition).

Although the officers contend that their tactics were calculated to insure *appellants'* safety during the search, we are at a loss to see how handcuffing four cooperative and unarmed individuals pursuant to an investigation in any way enhances their safety. Because we cannot conclude that the circumstances of this investigation warranted these extraordinary measures, we hold that appellants' detention constituted an arrest for which the officers must show probable cause. *Washington,* 98 F.3d at 1192; *United States v. Del Vizo,* 918 F.2d 821, 824 (9th Cir.1990); *United States v. Ricardo D.,* 912 F.2d 337 (9th Cir.1990). As the officers cannot demonstrate probable cause to arrest appellants—indeed, they do not attempt to do so—their actions were unlawful.

■ 3. *Qualified Immunity.* The defendant officers assert qualified immunity as a further defense to appellants' claims. To decide whether a defendant is protected by qualified immunity, a court must first determine whether, "taken in the light most favorable to the party asserting injury, ... the facts alleged show the officer's conduct violated a constitutional right." If the plaintiff's factual allegations do add up to a violation of the plaintiff's federal rights, then the court must proceed to determine whether the right was "clearly established." *Devereaux v. Abbey,* 263 F.3d 1070, 1074 (9th Cir.2001) (en banc) (quoting *Saucier v. Katz,* 533 U.S. 194, 121 S.Ct. 2151, 2156, 150 L.Ed.2d 272 (2001)). We have already shown that appellants' account of the facts, if true, would establish a violation of a constitutional right.

■ We therefore proceed to the second prong of the *Saucier* inquiry. The contours of the Fourth Amendment's general protections against unlawful search and seizure, as well as the specific limitations on detentions incident to searches and *Terry* stops, are "delineated with sufficient clarity to make a reasonable officer in the defendant[s'] circumstances aware that what he was doing violated the right" and are thus clearly established. *Id.* Several officers admitted lacking probable cause for an arrest, and a jury could conclude that any reasonable officer under the circumstances would have thought that handcuffing and pinning down cooperative suspects known to be unarmed was an arrest. On appellants' account, the scope of the search exceeded any exigent circumstances that the officers may have reasonably believed to exist. Moreover, the videotape evidence concerning training sessions shows that the officers may have acted in a manner inconsistent with their training. A jury, considering all the facts, could determine that defendants could not have "reasonably believed that [their] conduct did not violate [appellants'] rights." *See id.* Thus, the grant of summary judgment on qualified immunity was improper.

■ 4. *Municipal Liability.* To hold the City liable for § 1983 violations, the Appellants must show that (1) they were deprived of a constitutional right, (2) the City had a deliberate policy sanctioning the deprivation, and (3) the policy is the "moving force behind the constitutional violation." *Lee v. City of Los Angeles,* 250 F.3d 668, 681 (9th Cir.2001) (quoting *City of Canton v. Harris,* 489 U.S. 378, 389–91, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989)). Where the policy complained of is a failure to train (as opposed to training that directs city officers to engage in unconstitutional conduct, which would be covered in the general municipal liability cause of action),

that failure "can also create § 1983 liability where the failure to train 'amounts to deliberate indifference to the rights of persons' with whom those employees are likely to come into contact." *Lee,* 250 F.3d at 681 (quoting *City of Canton,* 489 U.S. at 388–89, 109 S.Ct. 1197). To establish liability, the inadequate training "must be closely related to the ultimate injury," *City of Canton,* 489 U.S. at 391, 109 S.Ct. 1197, such that constitutional violation would have been avoided if the City had properly trained the officers, *see Lee,* 250 F.3d at 681.

■ There is some evidence that it is the RPD's policy automatically to arrest persons, with or without probable cause, when officers are responding to reports of gunfire. In this case, "arresting officers" were designated even before police arrived at the scene, and several officers subsequently described the manner in which appellants were detained—which we have concluded amounts to an arrest—as consistent with routine RPD procedure under these circumstances. There was therefore evidence from which a municipal policy triggering the unconstitutional arrests that occurred here could be inferred. Because appellants have raised a controverted issue of fact as to whether such a policy exists, summary judgment was improper.

■ As to the separate cause of action against the City regarding failure to train, however, we do not believe appellants have met their burden, either with respect to an absence of relevant training or with respect to deliberate indifference of municipal officials. We have concluded that the entry into appellants' apartment was not unconstitutional, although the search may have been, so any failure to train concerning warrantless home entry, the main focus of appellants' failure to train cause of action, could not have caused appellants any constitutional injury. As to

failure to train officers on proper detention and search procedures, there was evidence of training materials in the record that are sufficient to negate any claim that the City was deliberately indifferent to the need to train officers on these matters. So the grant of summary judgment in favor of the City of the issue of failure to train was proper.

5. Because we reinstate some of the federal causes of action, the district court should reconsider what type of relief is available to appellants, including declaratory relief, injunctive relief and punitive damages,[1] as well as whether to entertain appellants' state cause of action pursuant to the court's supplemental jurisdiction. *See DiRuzza v. County of Tehama,* 206 F.3d 1304, 1315 (9th Cir.2000); 28 U.S.C. § 1367.

We therefore AFFIRM the district court's decision with respect to the failure to train, but REVERSE the decision in all other respects and REMAND the case for trial.

REINHARDT, Circuit Judge, concurring in part and dissenting in part.

I concur in all of the court's disposition except for part 3, which is also essentially correct, but which stops short of the ultimate holding that the analysis set forth in the disposition demands. I do not believe that any question of material fact remains as to whether the officers are entitled to qualified immunity for their unlawful detention of the appellants; clearly they are not. Accordingly, summary judgment on that claim should be granted to plaintiffs.

As we hold in part 2 of the disposition, the detention of the plaintiffs clearly exceeded the bounds of a reasonable investigatory detention, and constituted an arrest without probable cause. Thus, for the purpose of the first prong of the qualified immunity test set forth in *Saucier v. Katz,* 533 U.S. 194, 121 S.Ct. 2151, 2156, 150 L.Ed.2d 272 (2001), a violation has been established. As we then noted in part 3 of our disposition, the law in this regard was clearly established. Any reasonable officer would have known that handcuffing and pinning down cooperative suspects known to be unarmed constituted an arrest, *see Washington v. Lambert,* 98 F.3d 1181, 1187 (9th Cir.1996); *United States v. Bautista,* 684 F.2d 1286, 1289 (9th Cir. 1982), and no contention is made that probable cause existed. To the extent that questions of fact may exist regarding what the officers knew about the events of the evening in question prior to their arrival on the scene, the facts are not sufficiently material to require a trial. Accordingly, I do not believe that the officers may avail themselves of a qualified immunity defense.

Any error of material fact or law the officers may have made with respect to the unlawful arrests was clearly not a reasonable error under *Katz.* When it came to *Katz*'s second prong, the panel majority simply blinked, perhaps deterred by the byzantine analytical contortions in which the Supreme Court compels lower courts to engage in qualified immunity cases of the type before us. All the majority accomplishes by its failure fully to resolve the qualified immunity issue is to force the parties to undergo a wholly unnecessary trial on the issue—a trial that can lead to only one legally sustainable result. Having held on this appeal that the detentions constituted unlawful arrests, and that the law in that respect was clearly established,

---

1. Except as to defendant Parker, as to whom the claim for punitive damages has been dis- missed by stipulation.

it is inconceivable that (barring some circumstances not presented by the record before us) we could uphold a determination that the officers' failure to comply with well-established law was reasonable.

Because the parties presented cross-motions for summary judgment, and because a review of the defendants' summary judgment papers reveals no facts that would support a holding that the unlawful arrests resulted from a reasonable error of fact or law, I would remand the unlawful detention claim with instructions to enter summary judgment for plaintiffs, and to determine the amount of damages. *See Michael v. Riverside Cement Co. Pension Plan,* 266 F.3d 1023, 1029 (9th Cir.2001).