**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| MARTIN LUTHER KING, JR., COMMUNITY HOSPITAL, <br><br>           Plaintiff-Appellee, <br><br>   v. <br><br> COMMUNITY INSURANCE COMPANY, DBA Anthem Blue Cross and Blue Shield; et al., <br><br>           Defendants-Appellants. | No.   19-55053 <br><br> D.C. No. <br> 2:16-cv-03722-ODW-RAO <br><br><br> MEMORANDUM[*] |

Appeal from the United States District Court
for the Central District of California
Otis D. Wright II, District Judge, Presiding

Argued and Submitted May 13, 2020
Pasadena, California

Before: SCHROEDER and COLLINS, Circuit Judges, and BAYLSON,[**] District Judge.
Dissent by Judge COLLINS

---

[*]     This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**]     The Honorable Michael M. Baylson, United States District Judge for the Eastern District of Pennsylvania, sitting by designation.

# I. Introduction

This ERISA appeal considers an award of damages in favor of the Plaintiff, Martin Luther King, Jr. Community Hospital ("MLK"), for services rendered to employees of Budco[1]— the sponsor of the ERISA plan (the "Plan"), and one of the appellants. Budco's employees made covered visits to MLK. Although the employees had assigned their benefit payments to MLK, Anthem[2]—the Plan administrator, and also an appellant—ignored the assignments, and made payments directly to the employees, who were beneficiaries under the Plan. The employees retained these payments.

When MLK sought payment, Anthem ignored the request. Anthem, in refusing to pay MLK, asserted that an "anti-assignment" provision was part of the Plan and justified its payments directly to the employees. To recover the assigned payments, MLK filed this lawsuit. In the District Court, MLK asserted two grounds in support of its claims.

First, MLK asserted that the language of the anti-assignment provision did not prohibit the assignments. The District Court did not rule on this contention.

---

[1] This Memorandum refers to Budco Group, Inc. and Budco Group, Inc. Employee Benefit Plan, collectively as "Budco."
[2] This Memorandum refers to Community Insurance Company (doing business as Anthem Blue Cross and Blue Shield) and Anthem, Inc., collectively as "Anthem."

Second, MLK asserted that the District Court should ignore the anti-assignment provision because it was not part of the Plan.

The District Court awarded summary judgment and undisputed damages to MLK by construing the Plan documents to include benefits, but ruling that the anti-assignment language was not part of the Plan documents.

This Court affirms on two grounds. First that the language of the anti-assignment provision did not allow Anthem to ignore the assignments. Although this contention was raised in the District Court, the District Court did not rely on it in support of its judgment. Second, and alternatively, that the District Court correctly ignored the anti-assignment provision.

## II. Undisputed Facts

Between 2015 and 2017, Budco employees visited MLK's emergency room at least seventy-five times, and assigned their benefits under Budco's ERISA plan to MLK as a condition of receiving care. Anthem, the administrator of the Plan, had a policy of paying in-network providers directly. However, when beneficiaries visited an out-of-network hospital such as MLK, Anthem would pay the beneficiary. This forced out-of-network providers, specifically including MLK, to attempt to recover from the beneficiary. According to MLK, the purpose and effect of these policies was to coerce hospitals into joining Anthem's network.

19-55053

Because MLK was an out-of-network provider, when Budco employees received care at MLK, Anthem made payments directly to Budco's employees. Even though Budco's employees had assigned these payments to MLK, the employees deposited the payments into their personal accounts, and did not remit any of the benefit payments to MLK. In the course of this practice, Budco employees discovered they could "game the system" by visiting out-of-network hospitals, such as MLK, and collecting benefit payments without paying the hospital.

Budco regularly issues a Summary Plan Description ("SPD") for its ERISA plan, which all parties agree is a Plan document. Budco issued new or amended SPDs each year from 2015–2017, but the relevant language as it relates to this case is identical in all of them. The SPD states that it incorporates a document called "Certificates of Coverage" into the Plan, which are supposed to be provided by the insurance company (in this case, Anthem), and describe the Plan's "healthcare or other welfare benefits, and the terms and conditions for receiving those benefits . . . ." However, there was no document entitled "Certificates of Coverage" in the documents that Budco and Anthem asserted constituted the Plan.

The District Court considered a "Benefit Booklet" issued by Anthem, which contained a provision that restricted Budco employees' ability to assign benefit payments in certain ways. Anthem construed this provision to bar the assignments

4

by Budco employees to MLK, and thus when MLK sought payment from Anthem on account of the benefit assignments, its claims were ignored.

### III. Proceedings in the District Court

MLK brought suit against Budco and Anthem under ERISA's civil enforcement provision seeking benefit payments and declaratory relief. With the exception of the benefit payments associated with one emergency room visit, the District Court granted summary judgment in favor of MLK on its claim for ERISA benefits. The District Court found that the Benefit Booklet was not the Certificates of Coverage referenced in the SPD, and thus the Benefit Booklet was not an official Plan document. Although the District Court did incorporate into the Plan the parts of the Benefit Booklet that specified the basis on which payments were made in order to satisfy all the requirements of creating an ERISA plan, the District Court did not incorporate the anti-assignment provision. After the parties came to an agreement concerning the one outstanding emergency room visit, the District Court entered judgment in favor of MLK, and Budco and Anthem appealed.

### IV. Contentions on Appeal

On appeal, Budco and Anthem contend that the District Court erred in finding that the Benefit Booklet was not the Certificates of Coverage referenced in the SPD. Even if the Benefit Booklet is not the Certificates of Coverage, Budco and Anthem argue that when the District Court incorporated terms from the Benefit Booklet, it

19-55053

should have incorporated the entire document, including the anti-assignment provision.

MLK argues that the District Court properly effectuated Budco's intent in creating the Plan by incorporating only a portion of the Benefit Booklet, and excluding the anti-assignment provision. But even if the Benefit Booklet is a Plan document, MLK asserts that, by its very terms, the anti-assignment provision did not bar the assignments in this case. The District Court did not rule on this latter contention.

### V. Standard of Review on Appeal[3]

This Court reviews de novo a district court's grant of summary judgment. Mongeluzo v. Baxter Travenol Long Term Disability Benefit Plan, 46 F.3d 938, 942 (9th Cir. 1995). Under the standard set forth in Fed. R. Civ. P. 56(c), this Court "view[s] the evidence in the light most favorable to the nonmoving party, determine[s] whether there are any genuine issues of material fact, and decide[s] whether the district court correctly applied the relevant substantive law." Animal Legal Def. Fund v. U.S. Food and Drug Admin., 836 F.3d 987, 989 (9th Cir. 2016) (en banc) (per curiam). "We may affirm a grant of summary judgment on any basis

---

[3] The District Court had subject matter jurisdiction under 28 U.S.C. § 1331. The District Court's entry of summary judgment in favor of MLK is a final order, Abend v. MCA, Inc., 863 F.2d 1465, 1482 n.20 (9th Cir. 1988), and thus this court has jurisdiction under 28 U.S.C. § 1291.

the record supports, including one the district court did not reach." Venetian Casino Resort, L.L.C. v. Local Joint Exec. Bd. of Las Vegas, 257 F.3d 937, 941 (9th Cir. 2001).

## VI. Analysis

### A. The Anti-Assignment Provision Did Not Bar the Assignments in this Case

Although the District Court did not address the language of the anti-assignment provision, we find that it did not bar the assignments in this case. The provision restricted assignment as follows:

> You authorize the Plan to make payments directly to Providers for Covered Services. Payments may also be made to, and notice regarding the receipt and/or adjudication of claims sent to, an Alternative Recipient (any child of a Subscriber who is recognized, under a Qualified Medical Child Support Order (QMSCO), as having a right to enrollment under the Employer's Plan), or that person's custodial parent or designated representative. Any payments made by the Plan will discharge the Plan's obligation to pay for Covered Services. You cannot assign your right to receive payment to anyone else, except as required by a "Qualified Medical Child Support Order" as defined by ERISA or any applicable state law.
>
> Once a Provider performs a Covered Service, the Plan will not honor a request to withhold payment of the claims submitted.

"In interpreting the terms of an ERISA plan[,] we examine the plan documents as a whole . . . ." Vaught v. Scottsdale Healthcare Corp. Health Plan, 546 F.3d 620, 626 (9th Cir. 2008) (alteration in original) (quoting Welch v. Unum Life Ins. Co. of Am., 382 F.3d 1078, 1082 (10th Cir. 2004)). We apply "principles derived from

7                                                                    19-55053

state law but [are] guided by the policies expressed in ERISA and other federal labor laws." Richardson v. Pension Plan of Bethlehem Steel Corp., 112 F.3d 982, 985 (9th Cir. 1997) (citing Scott v. Gulf Oil Corp., 754 F.2d 1499, 1502 (9th Cir. 1985)). We "first look to explicit language of the agreement to determine, if possible, the clear intent of the parties," id. (quoting Armistead v. Vernitron Corp., 944 F.2d 1287, 1293 (6th Cir. 1991)), and interpret terms "in an ordinary and popular sense as would a [person] of average intelligence and experience," Evans v. Safeco Life Ins. Co., 916 F.2d 1437, 1441 (9th Cir. 1990) (per curiam) (alteration in original) (quoting Allstate Ins. Co. v. Ellison, 757 F.2d 1042, 1044 (9th Cir. 1985)).

When the anti-assignment provision is considered as a whole, its language does not bar assignments to "providers" such as MLK. The provision lists three entities other than the beneficiary that Anthem may pay directly. Providers are included among those entities. In the same paragraph, and only two sentences later, the anti-assignment provision forbids beneficiaries from assigning benefits to "anyone else." This sentence restricting assignment must be read consistently with the entire paragraph, which concerns benefit payments to entities other than the beneficiary. Thus, we interpret the anti-assignment provision's reference to "anyone else" to permit assignments to those entities, including "providers."

Budco and Anthem contend that the reference to "anyone else," should be interpreted to restrict the assignment of benefits to "anyone other than the

beneficiary." Interpreting the anti-assignment provision in this way, however, makes little sense because a beneficiary need not assign benefits to him- or herself. Budco and Anthem's argument would essentially interpret the sentence to forbid assignment to "anyone." But that would read the word "else" out of the sentence entirely. We will not interpret the anti-assignment provision in this way. See Babikian v. Paul Revere Life Ins. Co., 63 F.3d 837, 840–41 (9th Cir. 1995) (rejecting an interpretation of an ERISA plan that would render part of the plan superfluous).

Budco and Anthem also contend that interpreting "anyone else" to refer to the entities in the previous sentences would make the second reference to QMSCOs superfluous, because QMSCOs are already covered in the preceding sentences. But at most, this would make the term "anyone else" ambiguous. If the term "anyone else" were ambiguous, we would still interpret the anti-assignment provision to permit the assignments here because Budco and Anthem drafted the anti-assignment provision, and we "construe ambiguities in an ERISA plan against the drafter and in favor of the insured." Barnes v. Indep. Auto Dealers Ass'n of California Health and Welfare Benefits Plan, 64 F.3d 1389, 1393 (9th Cir. 1995) (citing Mongeluzo, 46 F.3d at 942). Thus, we conclude that the term "anyone else" in the anti-assignment provision refers to the entities in the preceding sentences. Budco's employees therefore validly assigned their benefit payments to MLK as a provider, and MLK was entitled to their benefit payments.

**B. Alternatively, the District Court Properly Excluded the Anti-Assignment Provision from the Plan Documents**

Alternatively, we agree with the District Court that the anti-assignment provision is not part of the Plan documents.  In affirming the anti-assignment provision's exclusion from the Plan, we are guided by the Supreme Court's decision in CIGNA Corp v. Amara, 563 U.S. 421 (2011).  In CIGNA, the Supreme Court reviewed a district court's decision to equitably reform a pension plan because of omissions and misrepresentations by the plan's sponsor.  Id. at 432–33.  In addition to highlighting the division of authority between the plan sponsor, which "creates the basic terms and conditions of the plan," and the plan administrator, which "manages the plan, [and] follows its terms in doing so,"  id. at 437, the Supreme Court approved of the equitable approach taken by the district court to reform the plan, because it "essentially held CIGNA to what it had promised," id. at 441.

Here, as the Plan's sponsor, it was Budco's responsibility to "create[] the basic terms and conditions of the plan . . . ."  Id. at 437.  Accordingly, Budco drafted the SPD, which states that it incorporates the Certificates of Coverage into the Plan.  The Certificates of Coverage, as defined by the SPD, are the "Plan booklets provided by the insurance company that provide contract administration services for the Plan," and "describe[] the healthcare or other welfare benefits, and the terms and conditions for receiving those benefits . . . ."  Defining the Certificates of Coverage in this way supported the purposes of ERISA by explaining the benefits to which beneficiaries

were entitled, 29 U.S.C. § 1021(a), and ensuring that beneficiaries received the benefits they were promised, Michael v. Riverside Cement Co. Pension Plan, 266 F.3d 1023, 1026 (9th Cir. 2001) (quoting Alessi v. Raybestos-Manhattan, Inc., 451 U.S. 504, 510 (1981)).

Budco and Anthem assert that the entire Benefit Booklet constitutes the Certificates of Coverage. There is no language in the Plan to warrant this conclusion. Further, Budco and Anthem provide no authority that requires documents to be incorporated as a whole into an ERISA plan, when governing plan documents say nothing about complete incorporation. Here, the Benefit Booklet does not use the term "Certificates of Coverage." Also, the SPD does not state that incorporation of the entire Benefit Booklet is required. The District Court's partial incorporation of the Benefit Booklet, and its exclusion of the portions that do not fit the SPD's definition of Certificates of Coverage, was consistent with its application of CIGNA's holding that ERISA principles allow equitable considerations to preserve an ERISA plan for the benefit of Budco's employees.

The District Court incorporated the parts of the Benefit Booklet that "specify the basis on which payments are made to and from the plan," as required by 29 U.S.C. § 1102(b). We do not find that the District Court erred in its analysis or holding. Another acceptable way of reviewing the record of this case is to find that the Benefit Booklet, in part, was the functional equivalent of what the Certificates

of Coverage was supposed to cover. We do not find these two positions irreconcilable.

Parts of the Benefit Booklet do appear to cover the same ground as the SPD stated would be covered in the Certificates of Coverage. However, parts of the Benefit Booklet go far beyond describing the healthcare benefits under the Plan, and the terms and conditions for receiving those benefits. Thus, the District Court did not err in determining that the portions of the Benefit Booklet that specify the basis on which payments are made to and from the Plan are incorporated into the Plan, but that the terms in the Benefit Booklet that go beyond describing the Plan benefits, and the terms and conditions for receiving those benefits, are not.

The anti-assignment provision is plainly not a benefit, and therefore the District Court correctly determined it should not be incorporated as a description of the Plan's benefits. The anti-assignment provision is also not a term and condition of receiving benefits. Terms and conditions of receiving benefits are the requirements that a beneficiary must meet to receive a benefit payment. For example, when a beneficiary receives services from an out-of-network provider, the Benefit Booklet requires the beneficiary to submit a claim, or have the provider submit a claim on the beneficiary's behalf. Because a claim must be submitted for the beneficiary to receive a benefit payment, that portion of the Benefit Booklet is a

19-55053

term and condition of receiving benefits, and is therefore within the SPD's definition of Certificates of Coverage.

As exemplified by the facts of this case, Anthem will make benefit payments regardless of whether the beneficiary assigned his or her Plan benefits. In this regard, the payments remain the same whether or not the beneficiary has made an assignment, and therefore Anthem's duty to make payments is not dependent on whether the benefits have been assigned. Thus, the anti-assignment provision does not relate to the terms and conditions of receiving benefits, and therefore the District Court did not err by refusing to incorporate it into Budco's ERISA plan.

## VII. Conclusion

For the foregoing reasons, we AFFIRM the District Court's entry of judgment in favor of MLK.

*Martin Luther King, Jr. Community Hosp. v. Community Ins. Co.*, No. 19-55053

COLLINS, Circuit Judge, dissenting:

Under the plain language of the plan documents governing Defendant-Appellant Budco Group, Inc. Employee Benefit Plan ("Plan")—an ERISA plan established for employees of Defendant-Appellant Budco Group, Inc. ("Budco")—Plan beneficiaries are generally prohibited from assigning their right to benefits to a third party, such as Plaintiff-Appellant Martin Luther King, Jr. Community Hospital (the "Hospital"). The district court erred in concluding otherwise, and I would therefore reverse its grant of partial summary judgment to the Hospital. Because the majority instead affirms that judgment, I respectfully dissent.

1. Contrary to what the majority concludes, *see* Mem. Dispo. at 10–13, the anti-assignment provision at issue here is an express term of the written plan documents that govern the Budco Plan.

Section 402(a)(1) of ERISA requires that any ERISA plan must be "established and maintained pursuant to a written instrument." 29 U.S.C. § 1102(a)(1). All parties agree that the Budco Summary Plan Description ("SPD") is such a Plan document, but they disagree as to what (if any) other documents also qualify. The SPD itself states that the SPD, "*in conjunction with the Certificates of Coverage* for your elected medical or welfare benefits options, constitutes both the official plan document and the required summary plan description" under ERISA

(emphasis added). The SPD defines the "Certificates of Coverage" as "Plan booklets provided by the insurance company that provide[s] contract administration services for the Plan," and it further states that they "describe[] the healthcare or other welfare benefits, and the terms and conditions for receiving those benefits, which are offered to employees of [Budco] and their families by the Plan." The "Benefit Booklets" issued by Plan administrator Defendant-Appellant Community Insurance Company (dba Anthem Blue Cross and Blue Shield ("Anthem")) meet this description exactly. They are literally "Plan booklets"; they are "provided by the insurance company that provide[s] contract administration services for the Plan," *viz.*, Anthem; and they "describe[] the healthcare or other welfare benefits, and the terms and conditions for receiving those benefits." They are therefore the "Certificates of Coverage" described by the SPD and, under the plain language of the SPD, they are Plan documents.

Because, however, the Plan sponsor (Budco) must be the one to "create[] the basic terms and conditions of the plan," *CIGNA Corp. v. Amara*, 563 U.S. 421, 437 (2011), I agree that the SPD cannot properly be construed to mean that *anything* that Anthem chose to insert into the Benefit Booklets would thereby become part of the Plan documents. But this principle provides no basis for disregarding the anti-assignment provision in the Benefit Booklets, because Budco *did* expressly provide (in its contract with Anthem) that the Plan documents *would* contain such

2

an anti-assignment provision. Anthem therefore did not usurp Budco's role as plan sponsor by adding an anti-assignment provision to the Benefits Booklets; on the contrary, it properly implemented the plan terms specified by Budco. *Id.*

The majority nonetheless suggests that the anti-assignment provision in the Benefits Booklets is not part of the "Certificates of Coverage," because that provision is not a "term" or "condition of receiving benefits." According to the majority, these words must be narrowly construed as applying *only* to "requirements that a beneficiary must meet to receive a benefit payment," *see* Mem. Dispo. at 12, and the anti-assignment provision is not such a *precondition* because "Anthem's duty to make payments is not dependent on whether the benefits have been assigned," *id.* at 13. But a provision as to *how* benefits will actually be paid over and to whom is obviously a "term" for the receiving of benefits, and the majority's unduly narrow reading of that word ignores its ordinary meaning. *Term*, WEBSTER'S THIRD NEW INT'L DICTIONARY ("WEBSTER'S THIRD") (1981) ("propositions, limitations, or provisions stated or offered for the acceptance of another and determining (as in a contract) the nature and scope of the agreement"). More importantly, the majority's narrow reading of "term" cannot be squared with the fact that the terms of an ERISA plan must set forth the "'*procedures* for paying and administering benefits.'" *Cinelli v. Security Pac. Corp.*, 61 F.3d 1437, 1441 (9th Cir. 1995) (emphasis added) (quoting *Watkins v.*

3

*Westinghouse Hanford Co.*, 12 F.3d 1517, 1523 (9th Cir. 1993)).  Because the anti-assignment provision is a rule about the procedures for receiving benefits, it is a "term[] . . . for receiving those benefits" under any reasonable reading of that phrase.

2.  I also disagree with the majority's alternative conclusion that the language of the anti-assignment provision did not bar the assignments that the Plan's beneficiaries made to the Hospital here.  *See* Mem. Dispo. at 7–9.

The anti-assignment provision is included within the following paragraph from the section of the Benefit Booklets entitled "Payment of Benefits":

> [1] You authorize the Plan to make payments directly to Providers for Covered Services.  [2] Payments may also be made to, and notice regarding the receipt and/or adjudication of claims sent to, an Alternate Recipient (any child of a Subscriber who is recognized, under a Qualified Medical Child Support Order (QMSCO), as having a right to enrollment under the Employer's Plan), or that person's custodial parent or designated representative.  [3] Any payments made by the Plan will discharge the Plan's obligation to pay for Covered Services.  [4] *You cannot assign your right to receive payment to anyone else, except as required by a "Qualified Medical Child Support Order" as defined by ERISA or any applicable state law.*

(Emphasis and bracketed numbers added).  The plain language of the fourth sentence clearly bars the assignments that happened here.  The beneficiaries assigned their right to receive payment to someone else—*viz.*, the Hospital—and no one contends that those assignments were required by a "Qualified Medical Child Support Order."  Anthem therefore properly declined to honor the Hospital's

4

requests for direct payment, which were based on a prohibited assignment.

The majority contends instead that, by prohibiting an assignment to "anyone *else*," the fourth sentence only prohibits assignments to persons other than those mentioned in the preceding three sentences. *See* Mem. Dispo. at 8–9 (emphasis added). According to the majority, reading "anyone else" as referring to any person *other than the beneficiary* would make the word "else" superfluous, because the same result could have been achieved simply by prohibiting assignment to "anyone." *See id.* at 9. For multiple reasons, the majority's construction is not a plausible reading of the language of the provision.

First, the majority's surplusage argument ignores the fact that, in ordinary English usage, the terms "anyone" and "anyone else" are often used interchangeably. In defining the word "else," Webster's Third gives as a usage example, "did you meet *anyone* ~." *Else*, WEBSTER'S THIRD (emphasis added). This example, of course, reflects the very same supposed surplusage that the majority decries: given that one does not "meet" oneself, this usage of "else" adds nothing, and one could just simply say "did you meet anyone." This example confirms that the phrase "anyone else" is commonly used to refer (as in the fourth sentence here) to any person other than the one being addressed.

Second, the majority's reading—that "anyone else" refers to anyone other than the persons mentioned in the prior three sentences—rests on the mistaken

5

premise that the prior three sentences address *assignments* to those persons. *See* Mem. Dispo. at 8. They do not. By "*authoriz[ing]* the Plan to make payments directly to Providers," at *the Plan administrator's* discretion, the first sentence does not effectuate an "assignment," which (as this case well illustrates) refers to a transfer by the beneficiary to the provider of a *right* to *demand* direct payment from the Plan administrator. *See Assign*, WEBSTER'S THIRD ("to transfer to another in writing (one's title to or interest in property, esp. intangible property)"); *see also Assign*, BLACK'S LAW DICTIONARY (11th ed. 2019) ("To convey in full; to transfer (rights or property)."). The second sentence likewise does not address assignments, but instead partially implements the requirements of ERISA § 609, which mandates that a plan "provide benefits" to any child who is a qualifying "alternate recipient" under a "qualified medical child support order." 29 U.S.C. § 1169(a). Such an order *either* "creates or recognizes the existence of an alternate recipient's right to, *or* assigns to an alternate recipient the right to, receive benefits for which a participant or beneficiary is eligible under a group health plan." *Id*. § 1169(a)(2)(A)(i) (emphasis added). The above-quoted paragraph's second sentence apparently implements the first of these two possibilities by acknowledging an alternate recipient's *direct* rights, while the *fourth* sentence provides for the second possibility, in which the alternative recipient's rights are acquired by *assignment*. Finally, the third sentence says nothing about assignment

6

at all, but instead establishes a general rule that Anthem will not pay the same benefits twice.[1]

Third, the majority's flawed reading itself leads to a significant surplusage problem. Under the majority's reading, "anyone else" in the fourth sentence *already* exempts payments under a "Qualified Medical Child Support Order," thereby rendering wholly superfluous the express "except" clause in the fourth sentence for such orders. This surplusage issue—which renders a whole clause superfluous—is much more significant than the majority's reliance on the gossamer distinction between "anyone" and "anyone else."

\* \* \*

For all of these reasons, I would conclude that the anti-assignment provision is part of the Plan documents and that it bars the assignments on which the Hospital relies here. I would therefore reverse the district court's grant of summary judgment to the Hospital on its first cause of action for ERISA benefits and would remand for entry of judgment in Defendants' favor. I respectfully dissent.

---

[1] Defendants also argued below that this sentence barred the second payment that the Hospital now seeks, but the district court rejected this argument and Defendants have not raised it on appeal.